## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| CATHY PASZKIET,<br>on behalf of herself<br>and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>THE ANIMAL DOCTOR, LTD. and LORI W.<br>WYATT,<br><br>    Defendants,<br><br>    and<br><br>THE ANIMAL DOCTOR, LTD. PROFIT<br>SHARING PLAN<br><br>    Nominal Defendant. | Case No. 1:24-cv-8403<br><br><br>**CLASS ACTION<br>COMPLAINT** |

Plaintiff Cathy Paszkiet, individually on behalf of herself, and on behalf of all others similarly situated, through her undersigned counsel, alleges as follows.

## **INTRODUCTION**

1.      This is an action is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*., by Plaintiff on behalf of herself and on behalf of a class of participants in and beneficiaries of The Animal Doctor, Ltd. Profit Sharing Plan ("the Plan") to restore losses and to remedy Defendant's breaches of fiduciary duties and other violations of ERISA in connection with the investments of the assets of the Plan.

2.      The Plan is a defined contribution plan where the investment decisions are made by the Trustee of the Plan. Participants do not have any power to decide and were not even told how Plan assets are invested. Indeed, the Plan fiduciaries provided Plan participants with little

information as to how their assets were actually invested and never provided any documentation regarding the Plan's investment allocation.

3.      Since at least March 2021, the overwhelming majority of the Plan's investments are and have been in the stock of only three pharmaceutical or biotech companies: Inovio Pharmaceuticals Inc., Moderna, Inc, and Novavax, Inc.  As of the end of 2021 and 2022, nearly 98% of the Plan assets were invested in these three companies with the remainder invested in cash or cash equivalents. Of those three companies, approximately 50% of the Plan's assets were invested in Inovio Pharmaceuticals Inc. as of December 31, 2021.

4.      By deciding to invest such a large amount of the Plan's assets in a single investment and class of investment and by continuing to maintain such investments, Defendant Lori W. Wyatt, who is and was the Trustee and the Investment Fiduciary, breached her fiduciary duties to invest the assets of the Plan in the best interests of the participants, prudently, in diversified assets, and consistent with the terms of the Plan and ERISA. As a result of Dr. Wyatt's decision to invest the Plan's assets in these undiversified investments, the Plan has lost millions of dollars. And Plaintiff's own account has declined precipitously.

5.      As a remedy, Plaintiff seeks to enforce the rights of the participants and the Plan, to recover the losses incurred by the Plan as a result of the breaches of fiduciary duty under ERISA or other violations, and to ensure that the Plan and its assets have been properly administered, managed, held in trust and distributed. Among the relief sought for these breaches and violations, Plaintiff requests that Defendants be ordered to pay the losses to the Plan, to disgorge any profits, to provide an accounting, to have a surcharge imposed against them, that any monies recovered for the Plan be allocated to the accounts of the Class and that Dr. Wyatt be removed as and permanently barred from serving a fiduciary of the Plan.

## JURISDICTION AND VENUE

6.      The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which gives the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

7.      Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2) because, at all relevant times, the Plan was and is administered in this District, the breaches and violations giving rise to the claims occurred in this District, and Defendant may be found in this District. Venue is also proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant resides in this District.

8.      The Court has personal jurisdiction over Defendants as the Plan is administered in this District, and Defendants are domiciled in this District, and Defendants regularly transact business in this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## THE PARTIES

**Plaintiff**

9.      Plaintiff Cathy Paszkiet is a former employee of The Animal Doctor, Ltd. Plaintiff Paszkiet was employed by The Animal Doctor, Ltd. from at least August 2004 to November 2023. Plaintiff commenced her participation in the Plan by no later than sometime in 2004 or 2005. After her employment with The Animal Doctor, Ltd. ended, Plaintiff remained a participant in the Plan. Her most recent statement, which is dated as of December 31, 2023 reflects that Plaintiff Paskiet had 19 years of vested service in the Plan.  As a result, Plaintiff Paszkiet is a fully vested participant

in The Animal Doctor, Ltd. Profit Sharing Plan. She is still a participant in the Plan within the meaning of the Plan and ERISA § 3(7), 29 U.S.C. § 1002(7) because she still has an account in the Plan and because she has a colorable claim for additional benefits as a result of Defendant's breaches and violations. Plaintiff resides in Crystal Lake, Illinois.

**Defendants**

10.     Defendant The Animal Doctor, Ltd. is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in Cary, Illinois. The Animal Doctor is the Plan Sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), the designated Plan Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and a named fiduciary of the Plan within the meaning of ERISA § 402, 29 U.S.C. § 1102.

11.     Defendant Lori W. Wyatt is a veterinarian and the owner of The Animal Doctor, Ltd. According to her Linked-in profile, Dr. Wyatt is also the President of The Animal Doctor, Ltd. Dr. Wyatt was appointed as the Trustee of the Plan pursuant to The Animal Doctor, Ltd. Profit Sharing Plan Trust Agreement effective as of January 1, 2022 (the "Trust Agreement") and continues to be the Trustee of the Plan. Pursuant to Section H.6.c of the Adoption Agreement, the Trustee is also the Investment Fiduciary. As a result, Dr. Wyatt also is and has been the Investment Fiduciary of the Plan. Upon information and belief, she had these roles or their equivalent prior to January 1, 2022. As a result of those roles, Dr. Wyatt is and has been a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) and she has and has exercised discretionary authority and discretionary responsibility in the administration of the Plan. As a fiduciary of the Plan, as the owner of at least 50% or more of the voting stock of The Animal Doctor, Ltd., and as an officer and/or director of The Animal Doctor, Ltd., Defendant Wyatt is also a "party-in-interest"

4

as to the Plan as defined in ERISA § 3(14) (A), (E), (F), (H) & (I), 29 U.S.C. § 1002(14) (A), (E), (F), (H) & (I). Defendant Lori W. Wyatt is a resident of Crystal Lake, Illinois.

**Nominal Defendant**

12.     The Animal Doctor, Ltd. Profit Sharing Plan ("the Plan" or "Profit Sharing Plan") is an employee pension benefit plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). The Plan is a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). Based on documents produced in response to According to the Summary Plan Description ("SPD"), the written instrument—within the meaning of ERISA § 402, 29 U.S.C. § 1102, by which the Plan is maintained—consists of The Animal Doctor Ltd Profit Sharing Plan Basic Plan Document #01 ("Plan Document") and the Adoption Agreement #001, which was most recently amended and restated as of January 1, 2022 ("the Adoption Agreement"). According to the Plan Document, the January 1, 2022 SPD, and the Plan's Form 5500 Reports, the money that is contributed to the Plan is held in trust pursuant to a trust agreement. The Plan is named as a nominal defendant in this action pursuant to Rule 19 of the Federal Rules of Civil Procedure to ensure that complete relief can be granted as to claims brought on behalf of the Plan.

## <u>CLASS ACTION ALLEGATIONS</u>

13.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following persons ("the Class"):

> All participants in The Animal Doctor, Ltd. Profit Sharing Plan at any time between March 8, 2021 (or the date that the Plan invested a majority of its assets in a single category of investments) to the present (except those participants who terminated without even partial vesting) and the beneficiaries of any such participants.

> Excluded from the Class are (1) Defendants, (2) any fiduciaries of the Plan, (3) other persons who had decision-making or administrative authority relating to the administration, investment allocation, modification, funding, or interpretation of the Plan, (4) the beneficiaries of such persons, the immediate relatives of such

persons, and (5) the legal representatives, assigns or successors in interest of any excluded person.

**Impracticality of Joinder**

14.     The members of the Class are so numerous that joinder of all members is impracticable. According to the 2023 Form 5500 Annual Report for the Plan filed with the Department of Labor ("DOL"), which is the most recent Form 5500, the Plan had 44 participants, including retired or separated participants entitled to future benefits as of the end of the Plan Year (*i.e.*, December 31, 2022). Under the terms of the Plan, each participant in the Plan was entitled to designate one or more beneficiaries, and pursuant to Section 7.04(a) of the Plan Document, every married participant had at least one beneficiary (a spouse) and some participants likely designated more than one beneficiary. Additionally, Section 7.04(c) of the Plan Document provides that in the absence of a spouse or other designated beneficiary, the beneficiary includes all of the participant's children in equal shares. Assuming that only 45% of the class is married (which is the overall rate as of 2022), and assuming that no unmarried participants have any beneficiaries (a very conservative assumption), the Class consists of at least 64 persons.

**Commonality**

15.     The issues of liability are common to all members of the Class and are capable of common answers as those issues include whether Defendants breached various fiduciary duties to the Plan and its participants, whether the fiduciary defendants are liable for their co-fiduciaries' breaches, whether the Plan suffered losses as a result of the fiduciary breaches and other violations and what is the appropriate relief of Defendants' violations of ERISA.

**Typicality**

16.     Plaintiff's claims are typical of the claims of other members of the Class because her claims arise from the same event, practice and/or course of conduct by Defendants.

Specifically, Plaintiff, on behalf of the Class, alleges that Defendants breached their fiduciary duties or otherwise violated ERISA in connection with the investment of Plan assets, management of the assets of the Plan, or in performing their fiduciary duties to the Plan. Plaintiff's claims are also typical of the claims of the Class because they generally seek recovery and relief on behalf of the Plan.

**Adequacy**

17.     Plaintiff will fairly and adequately represent and protect the interests of the Class.

18.     Plaintiff does not have any interests antagonistic to or in conflict with those of the Class.

19.     Defendants have no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

20.     Plaintiff is represented by counsel with extensive experience prosecuting class actions in general and ERISA class actions and particular experience and expertise regarding retirement plan litigation.

**Fed. R. Civ. P. 23(b)(1)(A)**

21.     The requirements of Fed. R. Civ. P. 23(b)(1)(A) are satisfied. Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and their participants. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the Plan as a whole. As a result, prosecution of separate claims by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

**Fed. R. Civ. P. 23(b)(1)(B)**

22.    The requirements of Fed. R. Civ. P. 23(b)(1)(B) are also satisfied. Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the Plan, would, as a practical matter, be dispositive of the interests of the other participants in the Plan even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

**Fed. R. Civ. P. 23(b)(2)**

23.    The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied as to the Class because Defendants have acted and/or failed to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the Plan as a whole. The relief sought in this case primarily consists of declarations that Defendants breached their fiduciary duties or engaged in other violations of ERISA and injunctive relief. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

**Fed. R. Civ. P. 23(b)(3)**

24.    The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. The common questions of law and fact concern whether Defendants breached their fiduciary duties to the Plan and Participants or violated ERISA. As the members of the Class were participants in that Plan, their accounts were affected by those breaches and violations. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants'

duties and obligations were uniform to all participants and therefore all members of the Class. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

25.     A class action is a superior method to other available methods of the fair and efficient adjudication of this action. As the claims generally are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan. Class certification is a superior method of proceeding because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the Plan.

26.     The following factors set forth in Rule 23(b)(3) also support certification:

a.      The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

b.      No other litigation concerning this controversy has been filed by any other members of the Class.

c.      This District is the most desirable location for concentrating this litigation because (i) all Defendants are located in this District; (ii) the Plan was and is administered in this District; (iii) the majority of the participant class members are located in this District; and (iv) a number of the witnesses, including a number of relevant non-party witnesses, are expected to be located in this District.

d.      There are no difficulties in managing this case as a class action.

## FACTUAL ALLEGATIONS

**Background About The Animal Doctor, Ltd.**

27. The Animal Doctor, Ltd. is a veterinary clinic based in Cary, Illinois providing medical treatment to pets like dogs, cats and small mammals.

28. According to the website of The Animal Doctor, Ltd., https://theanimaldoctor.net/, Lori W. Wyatt opened The Animal Doctor, Ltd. in July 1996. Defendant Lori W. Wyatt is the Practice Owner and a veterinarian of The Animal Doctor, Ltd.

29. Based on Section A.3.a of the Adoption Agreement, the Plan was originally effective as of January 1, 2002. Based on the recollection of Plaintiff, the Plan has existed at least since Plaintiff began employment with The Animal Doctor in 2004. Based on publicly-available Form 5500 annual reports filed with the United States Department of Labor, The Animal Doctor, Ltd has sponsored this Profit Sharing Plan since at least 2009.

**Relevant Terms of the Plan & Trust Agreement**

30. According to the Adoption Agreement, the Plan Document and the SPD, the terms of the Plan were most recently restated as of January 1, 2022.

31. According to Section A.8.a of the Adoption Agreement, elective deferrals are not allowed under the Plan. In other words, the Plan was funded entirely by employer contributions.

32. According to Section H.4.a of the Adoption Agreement, participants are not entitled to direct any of the investments of the Plan. Article VI, Section 6.02 of the Trust Agreement similarly provides: "Participants shall not have the right to direct investment of amounts allocated to their separate accounts under the Plan." Pursuant to Article III and Article VI of the Trust Agreement, all investment decisions for the Plan were made by the Trustee and/or Investment Fiduciary.

33. Article III of the Trust Agreement provides that "[i]n addition to all powers under common law, statutory authority and other provisions of this Article, the Trustee shall have the following powers and authorities to be exercised in accordance with and subject to the provisions of Article IV." Among the powers that Article III expressly provides the Trustee with the authority to "[i]nvest and reinvest the Trust Fund" in a wide range of investments.

34. Section 4.04 of the Trust Agreement expressly authorizes "[t]he Trustee, with the consent of the Investment Fiduciary, to retain the services of investment advisors to invest and reinvest the assets of the Trust Fund," as well as other advisors "as may be required in carrying out the provisions of the Plan."

35. Section 6.01 of the Trust Agreement provides: "The Investment Fiduciary shall have the exclusive authority and discretion to select the investment funds available for investment under the Plan ('Investment Funds')."

36. Section 6.01 of the Trust Agreement also provides that "In making such selection, the Investment Fiduciary shall use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

37. With respect to the diversification of the diversification of the investments of the Plan, Section 6.01 of the Trust Agreement required "The available investments under the Plan shall be sufficiently diversified so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so."

38. Section 6.01 of the Trust Agreement also required the Investment Fiduciary to notify the Trustee of the selection of the Investment Funds currently available for investments under the Plan.

39.     Section 11.02(b) of the Plan Document provided the Investment Fiduciary with the "following discretionary authority and responsibility:"

>    (1)     to manage the investment of the Trust;
>    (2)     to appoint one or more Investment Managers;
>    (3)     to hire such professional assistants and consultants as it, in its sole discretion, deems necessary or advisable; and
>    (4)     to establish, revise from time to time, and communicate to the Trustee or Investment Manager(s), an investment policy for the Plan.

40.     Section 6.03 of the Trust Agreement allowed the Investment Fiduciary to appoint Investment Managers as described in ERISA § 3(38), 29 U.S.C. § 1002(38).  Based on the lack of any agreement with an Investment Manager (or any other document indicating the appointment of any Investment Manager) in response to Plaintiff's request for documents pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), no Investment Manager, within the meaning of ERISA § 3(38), 29 U.S.C. § 1002(38) was appointed.  As no Investment Manager of the Plan was appointed, the Trustee did not receive any proper direction from any Investment Manager and was not a directed trustee within the meaning of ERISA § 405(d) 29 U.S.C. § 1105(d) or Section 6.03(2) of the Trust Agreement.

41.     Based on the Trust Agreement and the SPD provided to Plaintiff, Lori W. Wyatt has served as the Plan's Trustee continuously since at least January, 1, 2002.  Upon information and belief, Dr. Wyatt has served as Trustee of the Plan at least since January 1, 2021 if not since the inception of the Plan.

42.     Section H.6.b of the Adoption Agreement required the establishment of procedures for the Plan Administrator and the Investment Fiduciary in addition to those in the Plan Document. And Section 11.02(b)(4) of the Plan Document obligated the Investment Fiduciary to establish an investment policy for the Plan. No such procedures or investment policy were provided to Plaintiff in response to her request for documents pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

12

Based on the lack of such documents provided, there was no established procedures or investment policy for this Plan (other than the provisions in the Plan Document).

**Plan Incurs Large Losses**

43.     The fiduciaries of the Plan—the Plan Administrator, the Trustee and the Investment Fiduciary—generally did not provide participants in the Plan with information about the investments of the Plan.  Instead, Plan participants only received two documents annually about the Plan: First, a Summary Annual Report ("SAR") that simply reported the value of the Plan assets and Plan expenses; Second, an individualized participant statement that reported the beginning balance, contributions, earnings (or losses), distributions, transfers, forfeitures, ending balance and vested percentage.  Neither the SARs nor the annual account statements reported the investments of the Plan.

44.     Sometime in 2023, Plaintiff received a copy of the 2022 Summary Annual Report ("SAR") that revealed that the value of Plan assets had declined to $1,292,752 as of December 31, 2022 from $2,764,515 as of December 31, 2021.  The 2022 SAR reported that the Plan "experienced a change in its net assets of -$1,471,763."

45.     Sometime after receiving and reviewing the 2022 SAR, Plaintiff asked Dr. Wyatt, whom the 2022 SAR identified as the "representative of the Plan Administrator" for an explanation as to the reason for the decline. Dr. Wyatt responded that the reason for the decline was a decline in the value of the stocks in which the Plan was invested.  As such a precipitous decline was inconsistent with the performance of the overall stock market, Plaintiff asked for additional information and detail.  In response to that request, Dr. Wyatt provided Plaintiff with a copy of the 2022 Year End Account Report for the Plan.

46.     The 2022 Year End Account Report revealed that 2% of the Plan' assets were in cash (or cash equivalents) and 98% of the Plan assets were invested in just three pharmaceutical companies: Inovio Pharmaceuticals, Inc (INO), Moderna, Inc. (MRNA), Novavax, Inc. (NVAX). The 2022 Year End Account Report also revealed that the Plan's losses were attributable to significant declines in the price of the stocks of Inovio Pharmaceuticals, Inc (INO) and Novavax, Inc. (NVAX).

**Dr. Wyatt Invested the Plan Assets Heavily in Pharmaceutical Stocks**

47.     Based on the 2022 Year End Account Report provided by Dr. Wyatt to Plaintiff in November 2023, the Plan acquired the following shares of stock on March 8, 2021 in the following amounts:

| Company (Stock Ticker) | Shares | Cost |
|---|---|---|
| Inovio Pharmaceuticals, Inc (INO) | 154,000 | $1,400,100.94 |
| Moderna, Inc. (MRNA) | 5,400 | $706,185.29 |
| Novavax, Inc. (NVAX) | 3,900 | $685,616.82 |
| Total | | $2,791,903.05 |

48.     Based on the 2022 Year End Account Report provided by Dr. Wyatt to Plaintiff around November 2023, the Plan assets consisted of and had a value as of December 31, 2021 as follows:

| Type | Value | Percentage |
|---|---|---|
| Cash or Cash Equivalents | $55,561.09 | 2% |
| Equities | $2,697,925.00 | 98% |
| Total | $2,753,486.09 | 100% |

49.     Based on the 2022 Year End Account Report provided by Dr. Wyatt to Plaintiff around November 2023, the equity investments of the Plan had declined by more than $1.5 million by December 31, 2022 as set forth below:

| Company (Stock Ticker) | Cost | Value as of 12/31/2022 | Change in Value as of 12/31/2022 |
|---|---|---|---|
| Inovio Pharmaceuticals, Inc (INO) | $1,400,100.94 | $ 240,240.80 | ($1,159,660.94) |
| Moderna, Inc. (MRNA | $706,185.29 | $969,948.00 | 263,762.71 |
| Novavax, Inc. (NVAX) | $685,616.82 | $40,092.00 | ($645,524.82) |
| Total Equities | $2,791,903.05 | $1,250,280.00 | ($1,541,623.05) |

50.     Based on the 2022 Year End Account Report provided by Dr. Wyatt to Plaintiff around November 2023, the Plan assets consisted and had a value as of December 31, 2022 as follows:

| Type | Value | Percentage |
|---|---|---|
| Cash or Cash Equivalents | $23,703.66 | 1.9% |
| Equities | $1,250,280.00 | 98.1% |
| Total | $1,273,983.66 | 100% |

51.     Despite these large losses, 98% of the Plan's assets remained invested as of December 31, 2022 in the same three pharmaceutical companies (and the same amounts): Inovio Pharmaceuticals, Inc (INO), Moderna, Inc. (MRNA), Novavax, Inc. (NVAX).

52.     In May 2024, Plaintiff received a copy of the 2023 Summary Annual Report ("2023 SAR") that revealed that the value of Plan assets had further declined to $688,353 as of December 31, 2023 from $1,292,752 as of December 31, 2022. The 2023 SAR reported that the Plan "experienced a change in its net assets of -$604,399." Of that amount, only $99,972 was attributable to benefits paid to participants and beneficiaries and that change in value also includes $12,738 in employer contributions.  As such, over $500,000 appears to be attributable to further losses in the Plan's investments.

**The Plan's Investment Strategy was Imprudent and Undiversified**

53.     An allocation of 2% in cash and 98% in equities itself is not a properly diversified allocation for a retirement/pension plan. Of the $2.69 million invested in equities as of December 31, 2021, those investments were in just three stocks from at least March 8, 2021 through at least December 31, 2022 (if not later): Inovio Pharmaceuticals, Inc (INO), Moderna, Inc. (MRNA), Novavax, Inc. (NVAX). Each of those companies are in the pharmaceutical or biotechnology industries. As such, approximately 98% of the equity investments were invested in the same category or type of investment. Investing 98% of the Plan's assets in a single category of investment is not a proper diversification of the Plan's assets.

54.     Had the Plan's assets—reported in the 2021 Form 5500 as of January 1, 2021 at $2,185,448—been invested in a prudent and diversified investment strategy between March 8, 2021 and the present, the assets of the Plan would have increased significantly. For example, if the assets of the Plan were invested 60% in a stock index fund and 40% in a bond or fixed income fund—a conservative, but prudent investment strategy for a retirement assets—the value of the assets of the Plan as of June 2024 would have been approximately $2,674,535.07.  In other words, the assets of the Plan in the last three years would have *increased by $500,000* instead of decreasing by over $1.5 million. In short, Dr. Wyatt's decision to invest the Plan's assets in these imprudent and undiversified investments has caused the Plan at least $2 million in losses.

55.     Based on the Statement of Accounts for her individual account that Plaintiff received, the value of Plaintiff's account decreased from $53,817.01 as of January 1, 2022 to just $14,513.77 as of December 31, 2023. As the Plan only provides one account statement a year, Plaintiff does not know whether her account has further decreased in value since December 31,

2023. Had the Plan's assets been invested 60% in a stock index fund and 40% in a bond or fixed income fund, Plaintiff's account would have been worth over $57,000 today.

**Plaintiff Requests Documents About the Plan**

56.     On January 31, 2024, Plaintiff sent The Animal Doctor a letter by certified mail with return receipt requested, requesting copies of various Plan documents pursuant to Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4) including the following:

　　　　1.     Any Trust agreement or other contract for the Plan

　　　　2.     The written instrument under which the plan is operated or sets forth the terms of the Plan (commonly known as the "Plan Document")

　　　　3.     Any other documents or instruments under which the Plan is established or operated

　　　　4.     Any amendments to any of the above

　　　　5.     The Summary Plan Description

　　　　6.     Any summaries of material modifications to the Plan

　　　　7.     Documents that identify the current fiduciaries of the Plan

　　　　8.     The latest full annual report, including a statement of assets and liabilities of the plan and accompanying notes as well as a statement of income and expenses of the Plan, and accompanying notes.

57.     In a letter dated February 13, 2024, Lori W. Wyatt responded to Plaintiff's January 31, 2024 letter.

58.     Enclosed with the February 13, 2024 letter were some of the documents that Plaintiff had requested. Specifically, the letter enclosed the following documents:

　　　　a.     The Trust Agreement effective January 1, 2021;

17

    b.    The Summary Plan Description restated effective January 1, 2022;

    c.    The Basic Plan Document;

    d.    The Internal Revenue Service Opinion on the Qualification of the Plan dated June 30, 2020; and

    e.    The Summary Annual Report for Plan Year Ending December 31, 2022.

59.    The February 13, 2024 letter from Dr. Wyatt did not include at least the following documents (a) a statement of assets and liabilities of the plan and accompanying notes as well as a statement of income and expenses of the Plan, and accompanying notes; (b) the Procedures that were required to be created pursuant to Section H.6.b of the Adoption Agreement and which qualify as an instrument under which the Plan is operated; (c) the Investment Policy required under Section 11.02(b)(4) of the Plan Document and which qualify as an instrument under which the Plan is operated; (d) An agreement with any investment manager (to the extent one exists).

### COUNT I
### Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A), (B), (C) & (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), (C) & (D) Against Defendant Lori W. Wyatt

60.    Plaintiff repeats, reaffirms, and realleges paragraphs 1 through 59 of the Complaint as is they were fully restated at length herein.

61.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (B) with "care, skill, prudence, and diligence" and (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

62.     Based on the section entitled "Administrative Information" of the SPD: "The Plan's assets are held in a trust created under the terms of the Plan. The Trustee is Dr. Lori W. Wyatt."

63.     To fulfill her fiduciary duties, Lori W. Wyatt, as Trustee and as Investment Fiduciary, was required to ensure that that investments were in the best interests of the Plan and its participants, to undertake an appropriate and independent investigation of the investments the Plan made, and to ensure that the Plan's assets were appropriately diversified and were invested consistent with the Plan and ERISA. Among other things, Lori W. Wyatt was required to conduct a thorough and independent review of any investments, to make certain that reliance on any and all experts' advice was reasonably justified under the circumstances, to make an honest, objective effort to read and understand any advice and opinions and question the methods and assumptions that did not make sense.

64.     In order to adequately fulfill those duties, Lori W. Wyatt had a continuing obligation to monitor the assets of the Plan on regular intervals and re-assess whether the Plan's investments continued to be consistent with her obligations to invest the assets of the Plan loyally, prudently, in diversified investments and consistent with the terms of the Plan and ERISA.

65.     The 2021 Form 5500 filed with the Department of Labor dated July 19, 2022, reported that as of Plan Year End 2021, the Plan had $ 2,764,515 in assets. Of that amount, approximately 50% of the Plan's assets were in a single stock (Inovio Pharmaceuticals) and 98% of the Plan' assets were in a single category of investments (pharmaceutical investments).

66.     The 2022 Form 5500 filed with the Department of Labor dated March 24, 2023, reported that as of Plan Year End 2022, the Plan had $1,292,752 in total assets. In other words, 75% of the Plan's assets were in a single investment (Moderna) and 98% of the Plan' assets were in a single category of investments (pharmaceutical investments).

67.     Any loyal trustee acting in the best interests of the Plan and its participants would have recognized that it was not in the best interests of Plan participants to invest such a significant percentage of the Plan's assets in a single investment or category of investments.

68.     No prudent Trustee who had engaged in a prudent process in deciding where to invest the Plan's assets would have decided to invest such a significant percentage of the Plan's assets in a single investment or category of investment.

69.     An investment of more than 50% of the Plan's assets in a single security and more than 90% of the Plan's assets in three stocks constituting a single category of securities is an undiversified investment.

70.     Even if there was an investment policy that allowed such investment, that investment was contrary to Section 6.01 of the Plan Document.  Even if some provision of the written instrument of the Plan allowed investing such a large percentage of the Plan's assets in such undiversified investments, such an investment would have been contrary to ERISA and the Trustee and the Investment Fiduciary would have been required to ignore that provision in the written terms of the Plan.

71.     All or nearly all of the decline in value of the assets of the Plan are attributable to the decline in value of the stock of Inovio Pharmaceuticals and Novovax.

72.     Had the Plan been invested in nearly any other prudent investment or combination of prudent investments (such as an S&P index fund, a bond index fund), the Plan' assets would have *increased*.  In short, Dr. Wyatt's decision to invest the Plan's assets in these imprudent and undiversified investments has caused the Plan approximately losses not only based on the decline in the actual value but the loss of what the Plan would have earned had the Plan's assets been prudently invested in diversified investments.

73.     By failing to loyally and prudently invest and diversify the assets of the Plan consistent with the terms of the Plan and ERISA, Defendant Lori W. Wyatt breached her fiduciary duties under ERISA § 404(a)(1)(A), (B), (C) and (D), 29 U.S.C. § 1104(a)(1)(A), (B), (C) and (D) and caused the Plan to incur large losses.

### COUNT II
### Breach of Fiduciary Duty Pursuant to ERISA § 404(a)(A)(1)(A) & (B), 29 U.S.C. § 1104(a)(A)&(B) For Failure to Disclose Information Against Defendants Lori W. Wayne & The Animal Doctor, Ltd.

74.     Plaintiff repeats, reaffirms, and realleges paragraphs 1 through 73 of the Complaint as is they were fully restated at length herein.

75.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and … (B) with "care, skill, prudence, and diligence."

76.     An ERISA fiduciary's duty of loyalty and prudence under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) includes a duty to disclose and inform. Those duties not only require that a fiduciary comply with the specific disclosure provisions in ERISA, but also require (a) a duty not to misinform, (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful, and (c) a duty to convey complete and accurate information material to the circumstances of the participants and beneficiaries.

77.     Relying on the common law, the Seventh Circuit held in *Kenseth v. Dean Health Plan, Inc.,* 610 F.3d 452 (7th Cir. 2010) "[t]he duty to disclose material information is the core of a fiduciary's responsibility." The Seventh Circuit recognized that this duty "includes an affirmative obligation to communicate material facts affecting the interests of beneficiaries" and "[t]his duty exists when a beneficiary asks fiduciaries for information, and even when he or she does not."

21

Relying on both the Restatement of Trusts and the Third Circuit's decision in *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993), the Seventh Circuit explained "once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance [and] even if that information comprises elements about which the beneficiary has not specifically inquired."

78.     As the Supreme Court explained in *Mertens v. Hewitt Associates*, 508 U.S. 248, 259 n. 9 (1993), one of the principles of the common law of trusts incorporated into ERISA is the duty imposed on a trustee and other ERISA fiduciaries to provide an accounting to the participants and beneficiaries.

79.     The Restatement (Second) of Trusts § 172 explains that a trust "beneficiary may by a proper proceeding compel the trustee to render to the proper court an account of the administration of the trust." The Restatement (Second) of Trusts § 173 likewise provides that "the beneficiary is always entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust."

80.     One of the trust law treatises cited and relied on by the Supreme Court, Bogert & Bogert, *The Law Of Trusts And Trustees* § 861, explains that "[t]his basic remedy includes inspection of the trust property and records and papers, securing from the trustee relevant information, and obtaining an accounting in court."

81.     By failing to provide Plaintiff and the other participants in the Plan with sufficient information about the Plan's investments and the cause of the losses, which would allow them know material information about the assets in their accounts, their benefits and the cause of the Plan's losses, Defendants breached their fiduciary duties.

22

82.     As a result, Plaintiff and the Class are entitled to obtain sufficient records, papers and other information about the Plan and an accounting.

## COUNT III
**Breach of Fiduciary Duty to Monitor Under ERISA §§ 404(a)(1)(A), (B) and (D),
29 U.S.C. §§ 1104(a)(1)(A), (B) and (D) Against Defendant The Animal Doctor, Ltd.**

83.     Plaintiff repeats, reaffirms, and realleges paragraphs 1 through 82 of the Complaint as is they were fully restated at length herein

84.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

85.     Under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1) (A) and (B), a fiduciary with the authority to appoint and/or remove other fiduciaries has an obligation to undertake an appropriate investigation that the fiduciary is qualified to serve in the position as fiduciary and at reasonable intervals to ensure that the fiduciary who has been appointed remains qualified to act as fiduciary and is acting in compliance with the terms of the Plan and in accordance with ERISA.

86.     According to Article 2 of the Basic Plan Document, the Trustee was appointed by the Plan Sponsor, which was The Animal Doctor, Ltd.  Pursuant to Section 8.02 of the Trust

Agreement, the Employer, which was also The Animal Doctor, Ltd., had the power to remove the Trustee.

87.     Section 11.02 of the Plan Document provides that the Investment Fiduciary shall be specified in the Adoption Agreement and the in absence of such designation, the Plan Sponsor, which is The Animal Doctor, Ltd., will be the Investment Fiduciary.  Based on these provisions in the Plan Document and as the Adoption Agreement was signed by Dr. Wyatt as President of The Animal Doctor, Ltd., The Animal Doctor, Ltd. appointed the Investment Fiduciary.

88.     As the Plan Administrator—and because Wyatt served as both the Trustee and the Investment Fiduciary and was the President and Sole Owner of The Animal Doctor—Dr. Wyatt's knowledge is imputed to The Animal Doctor, Ltd. Additionally, as the Plan Administrator, The Animal Doctor, Ltd. had access to or could obtain access to information about the investment of the Plan if The Animal Doctor, Ltd. were properly monitoring the actions of the Trustee and the Investment Fiduciary. As such, The Animal Doctor, Ltd. knew, or in the exercise of reasonable diligence should have known, that the Trustee had invested over 90% of the Plan's assets in three stocks and a majority of the Plan assets in single stock.  As a result, The Animal Doctor Ltd. knew or should have known that such investments (a) were not in the best interests of the Plan's participants, (b) were not the result of a prudent process and were not substantively prudent, (c) constituted an undiversified investment, and (d) were inconsistent with the terms of the Plan Document and/or ERISA.

89.     Had The Animal Doctor, Ltd. properly monitored Lori W. Wyatt as Trustee or as Investment Fiduciary, The Animal Doctor, Ltd. should have done at least the following: (a) promptly removed Lori W. Wyatt as the Trustee and/or Investment Fiduciary; (b) appointed an

24

independent fiduciary or successive Trustee; and (c) taken actions necessary to remedy any fiduciary breaches and restored the losses to the Plan.

90.    By failing to properly monitor Lori W. Wyatt as Trustee and/or as Investment Fiduciary and by failing to take appropriate action upon learning of information suggesting that Lori W. Wyatt had breached her duties, The Animal Doctor, Ltd. breached its fiduciary duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A), (B) and (D).

**COUNT IV**
**Failure to Provide Documents Upon Request Pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) & ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A)**
**Against Defendant The Animal Doctor, Ltd. As Plan Administrator**

91.    Plaintiff repeats, reaffirms, and realleges paragraphs 1 through 90 of the Complaint as is they were fully restated at length herein.

92.    ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) provides that the administrator of an employee benefit plan "shall, upon written request of any participant or beneficiary, furnish a copy of certain enumerated documents as well as "other instruments under which the plan is established or operated" to the requesting participant or beneficiary within 30 days of the Request.

93.    The Seventh Circuit held in *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993) that fiduciaries breach their duties of loyalty and care if they do not communicate material facts affecting the interests of plan participants and this duty exists both when a beneficiary asks fiduciaries for information, and even when he or she does not.

94.    The SPD and the Form 5500s filed with the Department of Labor identify The Animal Doctor, Ltd. as the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). As a result of that position, The Animal Doctor, Ltd. had an obligation to respond to requests under ERISA §104(b)(4), 29 U.S.C. § 1024(b)(4) and to requests by participants pursuant to ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

25

95.     On January 31, 2024, Plaintiff sent a letter requesting various Plan documents from The Animal Doctor, Ltd., in its role as the Plan's Administrator, including the complete Plan document, Summary Plan Description, trust agreement, and financial statements as well as other documents under which the Plan is established or operated, in accordance with ERISA § 104(b), 29 U.S.C. § 1024(b).

96.     The Animal Doctor, Ltd. failed to provide at least the following documents in response to Plaintiff's request:

> a.      A statement of assets and liabilities of the plan and accompanying notes as well as a statement of income and expenses of the Plan, and accompanying notes.

> b.      The Procedures that were required to be created pursuant to Section H.6.b of the Adoption Agreement and which qualify as an instrument under which the Plan is operated;

> c.      The Investment Policy required under Section 11.02(b)(4) of the Plan Document and which qualify as an instrument under which the Plan is operated;

> d.      An agreement with any investment manager.

97.     To the extent that either (a) The Animal Doctor, Ltd. did not have possession of such documents or (b) such documents did not exist, but The Animal Doctor, Ltd. had the ability to create them, The Animal Doctor, Ltd. was required to do so to properly respond to Plaintiff's request.

98.     By failing to provide such documents, The Animal Doctor, Ltd. has failed to comply with Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4).

99.     Plaintiff has been prejudiced by The Animal Doctor, Ltd.'s failure to comply with ERISA § 104(b), 29 U.S.C. § 1024(b) by not receiving complete documents to litigate these claims.

100. Pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), and 29 C.F.R. § 2575.502c-1, the failure to produce the requested documents within 30 days of Plaintiff's request exposes The Animal Doctor, Ltd., as the Plan's Administrator, to statutory penalties in an amount not exceeding $110 per day for each day that the request remains unfulfilled beyond the 30-day deadline.

101. Pursuant to ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), a participant may bring a civil action to obtain the relief authorized by 29 U.S.C. § 1132(c) and 29 C.F.R. § 2575.502c-1. Pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish" by mailing the requested material to "the requesting participant . . . within 30 days after such request" may be liable for up to $110 per day in civil penalties.

102. As a result of its failure to produce the requested documents, Defendant The Animal Doctor, Ltd. can be ordered to provide the documents and is liable for the penalties under ERISA § 502(c), 29 U.S.C. § 1132(c).

## ENTITLEMENT TO RELIEF

103. By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled to sue each of the Defendants, (each of whom are fiduciaries) pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including for recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable or remedial relief as the Court may deem appropriate.

104. By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to sue any of the Defendants for any appropriate equitable relief to redress the wrongs described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and the other participants and beneficiaries in the Plan and the Class prays that judgment be entered against Defendants on all claims, and requests that the Court order or award the following relief:

A.　　Declare that each of the Defendants who are alleged to be a fiduciary breached her or its fiduciary duties under ERISA;

B.　　Require each fiduciary found to have breached his/her/its fiduciary duties to the Plan to jointly and severally restore all losses to the Plan that resulted from the breaches of fiduciary duty or to disgorge any profits pursuant to ERISA § 409, 29 U.S.C. § 1109(a), or ERISA § 405, 29 U.S.C. § 1105 or any other appropriate remedial or equitable relief;

C.　　Require that The Animal Doctor, Ltd., the Trustee and the Investment Fiduciary provide an accounting to the Plan participants;

D.　　Require that the proceeds of any recovery for the Plan be allocated to the accounts of the Class Member participants in the Plan (other than any Defendants) in proportion to the injury that they suffered as a result of the breach of fiduciary duty;

E.　　Order the removal of any of the breaching fiduciaries from their position as fiduciaries for the Plan and enjoin any of the breaching fiduciaries from acting as fiduciaries for any plan that covers any members of the Class;

F.　　Appoint an Independent Fiduciary to manage the Plan at Defendants' expense;

G.　　Order pursuant to ERISA § 206(d)(4), 29 U.S.C. § 1056(d)(4) that any amount to be paid to the Plan accounts of the Class can be satisfied by using or transferring any breaching fiduciary's Plan account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability;

H.     Award Plaintiff $110 per day in statutory penalties per violation from January 31, 2024 until the date The Animal Doctor, Ltd. comes into compliance with ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) for the failure to provide the documents requested pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) and other appropriate relief;

I.     Require Defendants to pay attorney's fees and the costs of this action pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) and/or ordering the payment of reasonable fees and expenses of this action to Plaintiffs' Counsel on the basis of the common benefit and/or common fund doctrine (and/or other applicable law) out of any money or benefit recovered for the Class in this action;

J.     Award prejudgment interest and post-judgment interest; and

K.     Award any such other relief that the Court determines that Plaintiffs and the Class are entitled pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or otherwise.

/s/ Michael Bartolic
Michael Bartolic
Bartolic Law
180 W. Washington, Suite 700
Chicago, Illinois 60602
Tel: (312) 635-0948
Email: michael@bartoliclaw.com

R. Joseph Barton
Barton & Downes LLP
1633 Connecticut Avenue NW, Suite 200
Washington, DC 20009
Tel: (202) 734-7046
Email: jbarton@bartondownes.com